**Thomas M. GIBSON and Polly Anna Gibson, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 83–2682 GA.**

United States District Court, W.D. Tennessee, W.D.

July 17, 1986.

William P. Kenworthy, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Memphis, Tenn., for plaintiffs.

W. Hickman Ewing, Jr., U.S. Atty., by Paul M. Predmore, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT

GIBBONS, District Judge.

Plaintiffs Thomas M. Gibson and Polly Anna Gibson seek a refund of taxes in the amount of $28,280.83. The amount at issue represents taxes and interest on a lump-sum distribution of $152,682.98 for disability retirement paid to Thomas Gibson pursuant to a plan under 26 U.S.C. Section 402.[1] Both parties have moved for summary judgment.

The issue presented by the motions is whether the lump-sum distribution made to plaintiff can be excluded from income under the provisions of 26 U.S.C. Section 105(c). The undisputed facts pertinent to the determination of this issue are as follows. In 1979 plaintiff Thomas Gibson became permanently disabled. For this reason he terminated or resigned his employment with F & W Express, Inc., effective June 30, 1979. Plaintiff had worked for F & W since 1957. He was 61 years old at the time of his resignation.

In his letter of resignation, plaintiff requested a lump sum distribution in accordance with the disability provisions of F & W's Profit Sharing Trust. The president of the company, C.N. Finleyson, replied to plaintiff's letter and indicated that the distribution would be made as soon as the market value of the plan assets as of June 30, 1979, could be established. Plaintiff received his distribution on July 3, 1979. He included its full amount on the supplemental income schedule of his 1979 tax return, filed jointly with plaintiff Polly Anna Gibson, but then listed the full amount as excluded from income under 26 U.S.C. Section 105(c) and (e). After a 1982 audit of the 1979 return, plaintiff paid the taxes and interest in dispute here.

The plan under which plaintiff received the distribution is entitled "F & W Express, Inc. Employees' Profit Sharing Trust, As Amended." Under its terms F & W each

1. Section 402 governs tax consequences of a distribution from a qualified pension, profit sharing or stock bonus plan fully funded by employer contributions.

year contributed a portion of its accumulated or current profits to the trustees of the plan. In turn, the trustees allocated a portion of the corporation's contribution to an account established for each member of the plan. Employees did not contribute to the plan. A member of the plan was entitled to receive the full value of his account upon normal retirement at age 65, early retirement at age 60 with the employer's consent or on termination due to permanent disability. The purpose of the plan is stated to be establishment of a retirement plan for employees. The plan has no provisions relating to health, accidents or disability of employees other than the disability retirement provision under which plaintiff received his distribution and a clause allowing an employee who signs an interest bearing note to borrow his vested interest in the plan upon certain specific emergencies including illness.

F & W provided health and accident coverage to its union employees through another plan and also provided medical insurance coverage to all its employees. Plaintiff was not a union employee.

Pursuant to the disability provision of the plan, plaintiff was entitled to the full value of his retirement trust account. A portion of the payment—$68,143.51—represented F & W's contributions to the plan allocated to plaintiff's account. The remainder represented the increase in value of plaintiff's account through gains and income that had accrued during his employment.

The statutory provision on which plaintiffs rely, 26 U.S.C. Section 105, governs the tax treatment of accident and health plans. Section 105(a) sets forth the general rule with respect to inclusion of employer contributions:

> Amounts attributable to employer contributions.—Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includable in the gross income of the employee, or (2) are paid by the employer.

The exception to this rule, found at 26 U.S.C. Section 105(c), provides:

> Payments unrelated to absence from work.—Gross income does not include, amounts referred to in subsection (a) to the extent such amounts—
>
> (1) constitute payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement, of the taxpayer, his spouse, or a dependent (as defined in section 152), and
>
> (2) are computed with reference to the nature of the injury without regard to the period the employee is absent from work.

Plaintiffs contend that the payment to Thomas Gibson falls within the exception of Section 105(c). Defendant disagrees and argues that the payment is not within the exception because (1) the F & W profit sharing trust is not an accident or health plan covered by Section 105 and (2) even if the trust is such a plan, the payment was not computed with reference to the nature of the injury.

After considering the positions of the parties and the applicable law, the court concludes that the F & W profit sharing trust is not a health or accident plan covered by Section 105.[2] The face of the plan and its explicit terms reflect that its sole purpose was establishment of a retirement plan for employees. The plan contains no reference to the applicable health and accident plan provisions of the Internal Revenue Code or to any intent to exclude payments made under it from income tax. No benefits are payable under the plan for

---

**2.** The affidavit statements of Gibson and Finleyson that the plan served a dual purpose as a profit sharing plan and an accident or health plan do not create a genuine issue of material fact as to whether the plan served a dual purpose. These statements are simply legal conclusions stated by witnesses not qualified to make such conclusions. The court must decide this issue based on the undisputed evidence before it about the nature of the plan and its provisions.

medical care in the event of illness or injury; nor does it provide compensation for specific illnesses or injuries. The only benefit related in any way to illness or injury is that received when retirement occurs because of permanent disability. At least two other employee plans did provide accident and health coverage.

The approach taken by this court in determining whether the profit sharing trust is an accident or health plan is similar to that of the Second Circuit in *Caplin v. United States*, 718 F.2d 544 (2d Cir.1983) and the United States District Court for the District of Minnesota in *Christensen v. United States*, 57 AFTR2d 86–995 (D.Minn. 1986) [Available on WESTLAW, DCTU database]. In *Caplin* the court noted that the analysis as to whether a particular profit sharing plan is in fact a dual purpose plan that also meets the requirements for a health and accident plan must not begin with an examination of the circumstances under which the payment was made. 718 F.2d at 547–48. It then pointed out:

> Generally, profit sharing plans and accident or health plans serve different purposes. Profit sharing plans are designed to provide an employee with deferred compensation, the amount of which depends upon the success of the business and the employee's position in that business. On the other hand, accident or health plans are designed to provide payments to employees in the event of illness or injury, without regard to the profitability of the business. In a lean year, an employee could properly expect his employer to contribute less money into a profit sharing plan than he might expect in a more profitable year. But, if that same employee suffered an injury, he would not expect his benefits under an accident or health plan to fluctuate according to the profitability of the enterprise. It was with these considerations and purposes in mind that Congress set forth *specific* rules for the tax treatment of amount received pursuant to profit sharing plans and accident or health plans. *Id.* at 548 (citations omitted) (emphasis in original).

Finally, the court observed that the Treasury regulation defining an accident or health plan provides only a "loose formulation" of what constituted such a plan [3] and that "[o]rdinarily, a definite program to provide accident or health coverage will be accompanied by certain idicia reflecting the plan's purpose." *Id.* at 549. The court then listed some of those indicia, concluded that the plan before it did not contain them and thus determined that the plan before it was not a dual purpose plan qualifying as an accident and health plan. *Id.* The indicia considered by this court are virtually identical to those considered in *Caplin*, and like the plan in *Caplin*, the F & W plan does not contain them.

The court in *Christensen* followed the approach of the *Caplin* court and similarly concluded that the Northwest Airlines, Inc. Pilots' Pension Plan was not a dual purpose plan. In analyzing the plan before it, the court said:

> Applying the Caplin analysis to the instant case, the court finds as a matter of law that Northwest's plan is not a dual purpose plan. None of the provi-

---

**3.** 26 C.F.R. Section 1.105–5(a) provides:

In general, an accident or health plan is an arrangement for the payment of amounts to employees in the event of personal injuries or sickness. A plan may cover one or more employees, and there may be different plans for different employees or classes of employees. An accident or health plan may be either insured or noninsured, and it is not necessary that the plan be in writing or that the employee's rights to benefits under the plan be enforceable. However, if the employee's rights are not enforceable, an amount will be deemed to be received under a plan only if, on the date the employee became sick or injured, the employee was covered by a plan (or a program, policy, or custom having the effect of a plan) providing for the payment of amounts to the employee in the event of personal injuries or sickness, and notice or knowledge of such plan was reasonably available to the employee. It is immaterial who makes payment to the benefits provided by the plan. For example, payment may be made by the employer, a welfare fund, a State sickness disability fund, an association of employers or employees, or by an insurance company.

sions one would expect to find in a health plan exist in Northwest's plan. The title of the plan indicates that it is a pension plan. There is no preamble which states that a goal of the plan is to provide health care or security to its employees. Further, the plan does not provide for compensation for medical expenses or specific injuries. There is no provision for payments for medical reasons unless the pilot can no longer work for Northwest. For example, the plan does not cover a case where the pilot is ill but able to continue flying. Moreoover, the amount received varies according to the pilot's salary prior to termination of his employment. Under these circumstances, the court concludes that the plan is not the type of health plan that Congress was addressing in I.R.C. § 105. 57 AFTR2d at 86–997.

Again, this analysis is substantially identical to that employed by this court and supports the conclusion that the F & W profit sharing plan is not a health and accident plan.

Plaintiffs rely on two cases—*Wood v. United States*, 590 F.2d 321 (9th Cir.1979), and *Masterson v. United States*, 478 F.Supp. 454 (N.D.Ill.1979)—in support of their argument that the F & W plan was a dual purpose plan that served as both an accident and health plan and a profit-sharing plan. Neither case, however, contains the careful examination of a plan's features provided by *Caplin* and *Christensen.* In addition, neither case fully stands for the proposition that plaintiffs argue.

*Wood* is of little help to plaintiffs simply because the Ninth Circuit in that case did not have before it the issue of whether the plan was an accident or health plan. 590 F.2d at 323. The district court had resolved this issue and concluded that the plan did qualify as an accident or health plan under Section 105. *Id.* The government did not contest this ruling on appeal. *Id.* The issue in *Wood* was the taxability of the particular payment made under the admittedly dual purpose plan.

*Masterson* also does not assist plaintiffs. The court in *Masterson* attempted no analysis at all of whether the plan before it was a dual purpose plan. Rather, it started with the assumption that if the Section 105(c) requirements are met, the payment is excludable from income. Thus, the *Masterson* court entirely omitted an essential step in the analysis. *Masterson* derived support for this approach from the *Wood* court's comment that until the payment is actually made, its "precise nature and taxable status ... remains uncertain." 590 F.2d at 323. *Masterson's* reliance on this statement in *Wood* to justify its own analysis is misplaced, and the *Masterson* approach is itself unsound. As the *Caplin* court noted in discussing *Masterson's* reliance on *Wood* and the fallacy of the *Masterson* approach:

This statement may well be true where there is, in fact, a plan designed to serve a dual purpose. However, it is not a reliable guide for beginning an analysis of whether a lump sum payment is or is not excludable from income. To decide that issue on an *ad hoc* or *post facto* basis depending on the circumstances under which a payment is made not only puts the cart before the horse, but also ignores the legislative scheme. In order to claim entitlement to income exclusion, Congress envisioned, first, that there be a plan, and, second, that the taxpayer prove he meets its conditions. 718 F.2d at 547 (citations omitted).

Even if this court could conclude that the F & W plan was an accident and health plan, it could not find that the payment to Thomas Gibson meets the requirements of Section 105(c). The payment to Gibson was *not* computed with reference to the nature of the injury. To be sure, the payments would not have been made if the disability had not been permanent in duration; the nature of the injury creating the disability, however, had nothing at all to do with computation of the payment. The computation of the payment was made solely by reference to the amount of employer contributions on behalf of Gibson and the value

of the plan assets as of June 30, 1979. *Cf. Christensen*, 57 AFTR at 86–997 to –98.

Plaintiffs again rely on *Wood* and *Masterson* and argue that the payment to Thomas Gibson falls within the Section 105(c) exception. Neither case, however, specifically applied the language of Section 105(c)(2) to its facts; both simply concluded that the payments in those cases were made "for" disability. 590 F.2d at 323; 478 F.Supp. at 456. The plain language of Section 105(c) requires more than the making of a payment "for" disability.

Defendant's motion for summary judgment is granted.

IT IS SO ORDERED.