Mary MASTERSON, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 78 C 2438.

United States District Court,
N. D. Illinois, E. D.

Oct. 15, 1979.

As Amended Oct. 31, 1979.

Paul J. Maganzini, James McMahon, Chicago, Ill., for plaintiff.

John S. Miles, Trial Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

CROWLEY, District Judge.

This is an action for the recovery of personal income taxes assessed and collected pursuant to the Internal Revenue Code of 1954. This Court has jurisdiction under 28 U.S.C. § 1346.

Mary Masterson filed a 1976 joint tax return on behalf of herself and her husband, Bernard, who died on May 29, 1976. She included the amount of a lump sum distribution her husband received from his employer, Opelika Manufacturing Corporation (Opelika), and paid taxes on the entire distribution. A timely claim for refund was denied. She now claims that this distribution under a profit-sharing plan qualifies as a disability payment under 26 U.S.C. § 105 and is excludable from gross income. The United States has filed a counterclaim for unpaid taxes on monthly payments Opelika paid her husband after he had terminated his employment but before he began to receive payments under Opelika's group disability insurance policy. Currently pending before the Court are motions by both the taxpayer and the government for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1]

The facts are stipulated. All Opelika's salaried employees who have completed five years of continuous service have an account in the corporation's profit-sharing trust. This trust, to which the corporation is the

---

1. Plaintiff has moved for summary judgment on its complaint and dismissal of defendant's counterclaim with prejudice. Defendant has moved for summary judgment on the complaint and the counterclaim.

sole contributor, is a qualified profit-sharing trust taxable under 26 U.S.C. § 402(a).[2] The employee is entitled to the funds in the account on two different bases. Under section 7.03 of the plan, the employee has a vested right to receive a percentage of the funds in the account upon termination of employment. An employee has a vested right to one hundred percent of the funds in his account after ten years of employment. In contrast, under section 6.05 of the plan, an employee who is permanently disabled is entitled to one hundred percent of the funds in his account regardless of whether he has accumulated a vested right to the same percentage under section 7.03.

At the time Bernard Masterson became permanently disabled he had worked for Opelika for twenty-five years. While he was not yet eligible for retirement, he had a vested interest under section 7.03 to receive one hundred percent of the funds in his account upon termination of his employment. Additionally, because he was permanently disabled, he was entitled to receive one hundred percent of his account pursuant to section 6.05.

The sole issue is the nature of the payments made by Opelika to Masterson. If the lump sum payment made under the profit-sharing trust is construed as one received for "permanent loss or loss of use of a member or function of the body", computed "with reference to the nature of the injury without regard to the period the employee is absent from work," it is an amount received under an accident or health plan and excludable from gross income under 26 U.S.C. § 105.[3] On the other hand, if this lump sum distribution is construed as a distribution of the taxpayer's earned share of profits, it is taxable under 26 U.S.C. § 402(a). Similarly, if the monthly payments, made by Opelika before the group disability insurance payments began, are construed as sums paid under a health or accident plan, they are not taxable.

The government argues that the entire lump sum distribution cannot qualify as a disability payment within the scope of 26 U.S.C. § 105 because Bernard Masterson had a vested right to the entire amount prior to his disability. The government asserts that 26 U.S.C. § 402(a) controls because the termination of employment, and not the disability causing the termination, triggered the lump sum distribution. Relying heavily on *Wood v. United States*, 590 F.2d 321 (9th Cir., 1979), Masterson counters that when funds in a profit-sharing plan are paid because of a disability, the payment assumes a tax-free status.

The *Wood* court, in considering the characterization of payments made pursuant to a profit-sharing plan, focused on the circumstances in which the payments were made, not the source of the funds. It held that because an employee profit-sharing plan may serve dual purposes, payments made pursuant to the plan may or may not be taxable. The precise nature and taxable status of such payments is uncertain until the funds are disbursed.

Acknowledging that *Wood* supports plaintiff's position, the government urges that the *Wood* rationale be rejected. To do so would lead to inequitable results. Under the government's analysis an employee disabled after a short period of employment, before the right to the funds in the profit-sharing trust had vested, would not be re-

---

**2.** 26 U.S.C. § 402, in pertinent part, provides:
  *(a) Taxability of beneficiary of exempt trust.—*
    *(1) General rule.—Except as provided in paragraphs (2) and (4), the amount actually distributed or made available to any distributee by any employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to him, in the year in which so distributed or made available, under section 72 (relating to annuities).  . . .*

**3.** 26 U.S.C. § 105, in pertinent part, provides:
  *AMOUNTS RECEIVED UNDER ACCIDENT AND HEALTH PLANS . . . .*

  *(c) Payments unrelated to absence from work.—Gross income does not include amounts referred to in subsection (a) to the extent such amounts—*
    *(1) constitute payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement, of the taxpayer, his spouse, or a dependent (as defined in section 152), and*
    *(2) are computed with reference to the nature of the injury without regard to period the employee is absent from work.*

quired to pay taxes on the money received for his disability whereas an employee who became disabled after his right to the funds had become fully vested would be subjected to tax liability on these amounts. There is no reason why the tax liability of a disabled employee should turn on when the disability occurs. The lump sum distribution made to Bernard Masterson is excludable from gross income because it represents compensation for disability.

■ Under Opelika's Group Disability Insurance Plan there is a six month waiting period before the employee is eligible for disability payments. During this waiting period Opelika paid Masterson $1,000 a month. The parties stipulated that these payments "were not gifts, nor were they made pursuant to any formal agreement or health plan, but were unilaterally made by Opelika with the intent of compensating Mr. Masterson for his disability and on account of his long and faithful service to the company."[4] Plaintiff contends that despite the absence of a formal plan, any payment made by an employer for the purpose of insuring and indemnifying the employee is a payment made pursuant to an accident or health plan.

26 U.S.C. § 105 provides that amounts received as compensation for personal injury, sickness or lost wages under an employer financed plan are excludable from gross income. Treasury Regulation § 1–105.5(a)[5] liberally construes the definition of employer accident and health plans. However, both the statute and the regulation contemplate that the payments be made pursuant

to a plan which has "the general indicia of insurance." *Sidman v. United States*, 336 F.Supp. 474 (S.D.N.Y., 1971). There is no indication that the monthly payments made to Masterson were made in accordance with an employer plan designed to insure or indemnify the employee. Indeed, the stipulation speaks of compensating Masterson for his long and faithful service and states that these payments were made because the corporation's accident plan had not yet become effective. These payments were not received pursuant to an employer financed health plan and are fully taxable.

Summary judgment is entered in favor of the plaintiff on the complaint. Summary judgment is entered in favor of the defendant on the counterclaim.

---

4. Supplemental and Final Pretrial Order, paragraph 17.

5. Treasury Regulation § 105–5(a), in pertinent part, provides:

*In general, an accident or health plan is an arrangement for the payment of amounts to employees in the event of personal injuries or sickness. A plan may cover one or more employees, and there may be different plans for different employees or classes of employees. An accident or health plan may be either insured or noninsured, and it is not necessary that the plan be in writing or that the employee's rights to benefits under the plan be enforceable. However, if the employee's rights are not enforceable, an amount will be* *deemed to be received under a plan only if, on the date the employee became sick or injured, the employee was covered by a plan (or a program, policy, or custom having the effect of a plan) providing for the payment of amounts to the employee in the event of personal injuries or sickness, and notice or knowledge of such plan was reasonably available to the employee. It is immaterial who makes payment of the benefits provided by the plan. For example, payment may be made by the employer, a welfare fund, a State sickness or disability benefits fund, an association of employers or employees, or by an insurance company.*