Randall L. **BEISLER** and Judith K. **Beisler**, Petitioners-Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent-Appellee.

No. 85–7222.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 9, 1985.

Decided April 18, 1986.

---

Deborah M. Regan, Robert V. Atmore, Lindquist & Vennum, Minneapolis, Minn., for petitioners-appellants.

John Griffin, Michael Paup, Glenn Archer, Washington, D.C., for respondent-appellee.

Before TANG and WIGGINS, Circuit Judges, and WILLIAMS,* District Judge.

WIGGINS, Circuit Judge.

Randall and Judith Beisler appeal from a Tax Court decision holding that payments Randall received from the Bert Bell NFL Retirement Plan (NFL Plan) are not excludable from gross income under 26 U.S.C. § 105(c)(1982). We have jurisdiction under 26 U.S.C. § 7482 (1982), and we affirm.

## I. FACTS AND PROCEEDINGS BELOW

Randall played professional football from 1966 through 1975. In 1975, he injured his neck in an NFL game while playing for the Kansas City Chiefs. The injury caused him to lose 60 to 79 percent of the use of his

---

* Honorable David W. Williams, Senior United States District Judge for the Central District of California, sitting by designation.

neck. Randall's physicians directed him not to play professional football again and not to engage in a profession requiring strenuous labor.

After the injury, Randall applied for a "line-of-duty disability benefit" under the NFL Plan. His application was approved, and in 1979, he received a total of $47,475 in payments from the plan. The Beislers reported $10,552 of this as income for 1979.

Contributions to the NFL Plan are made entirely by the member clubs of the NFL, including the Kansas City Chiefs. Under the NFL Plan, a player may receive a monthly line-of-duty disability benefit if he incurs "a substantial disablement" during any regular NFL game. The NFL Plan defines "substantial disablement" as a permanent disability resulting in, among other things, at least a 50 percent disability of the neck. Under the plan, a disability is deemed permanent if it persists for at least 12 months and if it causes retirement from professional football. A line-of-duty disability benefit equals 100 percent of a player's total "benefit credits." A player earns a specified benefit credit for each credited football season he plays. From 1966 through 1975, a player earned from $65 to $110 of benefit credits per season.

Thus, entitlement to the disability payment requires a threshold diagnosis of a substantial, permanent injury as defined by the NFL Plan. Once this threshold is reached, the precise benefit payment is determined solely by the number of professional football seasons for which the player is given credit. The amount of the payment does not vary depending upon the nature of the injury.

The Commissioner determined a deficiency in the Beislers' income taxes for 1979 based on inclusion in their gross income of the entire amount of disability benefits Randall received from the NFL Plan. The Tax Court upheld the Commissioner's deficiency determination, and the Beislers appeal.

## II. STANDARD OF REVIEW

The question of what constitutes income for federal tax purposes is a question of law. *See First Charter Financial Corp. v. United States,* 669 F.2d 1342, 1345 (9th Cir.1982). We review questions of law *de novo. United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## III. DISCUSSION

Generally, amounts an employee receives through an accident or health insurance plan are included in the employee's gross income if those amounts "(1) are attributable to contributions by the employer which were not includable in the gross income of the employee, or (2) are paid by the employer." 26 U.S.C. § 105(a) (1982). However, a taxpayer may exclude from gross income amounts normally includable under section 105(a) if those amounts satisfy the requirements of 26 U.S.C. § 105(c) (1982).

To exclude benefits from income under section 105(c), the taxpayer must first prove that the amount he received was paid through an accident or health insurance plan. *See Caplin v. United States,* 718 F.2d 544, 547 (2d Cir.1983); *Wood v. United States,* 590 F.2d 321, 323 (9th Cir.1979); *see also* Treas.Reg. § 1.105–5(a) (1964). The taxpayer must next prove that the amount "constitute[s] payment for the permanent loss or loss of use of a member or function of the body, or permanent disfigurement, of the taxpayer...." 26 U.S.C. § 105(c)(1) (1982). And, finally, the taxpayer must demonstrate that the amount is "computed with reference to the nature of the injury without regard to the period the taxpayer is absent from work." 26 U.S.C. § 105(c)(2) (1982).

A. *Payment Through an Accident or Health Insurance Plan*

■ The government does not dispute that the amount Randall received from the NFL Plan was paid through an accident or health insurance plan. Although the NFL Plan is called a "retirement plan," it clearly serves a dual purpose as both a retirement

plan and an accident or health insurance plan. Benefits paid for injury or illness from such dual purpose plans are excludable from gross income if they satisfy the other requirements of section 105(c). *See Caplin,* 718 F.2d at 547; *Wood,* 590 F.2d 323.

### B. *Section 105(c)(1)*

For purposes of this appeal, we assume without deciding that the amount Randall received from the NFL Plan was paid for permanent loss or loss of use of a member or function of his body. For a discussion of the requirements of section 105(c)(1) see *Watts v. United States,* 703 F.2d 346, 350–53 (9th Cir.1983).

### C. *Section 105(c)(2)*

Section 105(c)(2) essentially contains two requirements: (1) the payments must be computed with reference to the nature of the injury, and (2) the payments must be computed without regard to the period the employee is absent from work. Amounts received from an accident or health insurance plan are excludable from gross income under section 105(c) only if both clauses of section 105(c)(2) are satisfied. *See Caplin,* 718 F.2d at 549; *Hines v. Commissioner,* 72 T.C. 715, 720 (1979).

#### 1. *Computed with Reference to the Nature of the Injury*

The Tax Court determined that the amount Randall received from the NFL plan was not computed with reference to the nature of his injury. Relying on its decision in *Hines v. Commissioner,* 72 T.C. 715, 720 (1979), the Tax Court held that benefits satisfy the nature-of-the-injury requirement only if they vary according to the type of injury received. The court noted that all NFL players who sustain career-ending injuries and whose football careers span the same period receive the same line-of-duty disability payment regardless of the type of injury they sustain.

The Beislers contend that the Tax Court's interpretation of the nature-of-the-injury requirement is wrong. They base

their argument on our decision in *Wood v. United States,* 590 F.2d 321 (9th Cir.1979). The taxpayer in *Wood* was covered by an employer funded retirement plan. Under the terms of the plan, employees who left the company after twenty years of service received the full amount in their retirement plan accounts. If they left at any time prior to twenty years, they received a lesser percentage of their accounts based on the number of years they had worked for the company. However, if an employee left work prior to twenty years service due to total and permanent disability, that employee was entitled to receive the full amount in his account. The taxpayer left work at a time when he was entitled to 85 percent of his account. However, because his departure was due to total and permanent disability, he received 100 percent of his account.

The issue before us in *Wood* was whether the amount received by the taxpayer was received through an accident or health insurance plan and thus excludable under section 105(c) or whether the amount was received through a profit-sharing plan and thus taxable under 26 U.S.C. § 401. *Wood,* 590 F.2d at 323. We determined that the payments were made through a health plan and were therefore excludable from gross income under section 105(c). *Id.* We did not discuss the other requirements of section 105(c). However, a determination that all the requirements of section 105(c) were satisfied is implicit in our decision that the amount received was excludable from gross income.

Because there is no indication that the amount the taxpayer in *Wood* received would have been different if a different type of injury had caused his total and permanent disability, the Beislers contend that a necessary implication of our decision is that the nature-of-the-injury requirement of section 105(c)(2) is satisfied if a health plan requires an initial determination of disability before benefits are paid. In effect, the Beislers would have us read section 105(c)(2) to mean that benefits are excludable if they are paid because of the

injury described in section 105(c)(1) and are not computed with reference to the period the employee is absent from work.

■ We reject the Beislers' interpretation of *Wood.* Reading *Wood* as the Beislers suggest results in removal of the nature-of-the-injury requirement from section 105(c)(2). We should avoid an interpretation of the statute that renders any part of it superfluous and does not give effect to all of the words used by Congress. *In re Co Petro Marketing Group, Inc.,* 680 F.2d 566, 569–70 (9th Cir.1982).

The Beislers' reading of *Wood* is also inconsistent with the purpose of section 105 and the income tax laws. The purpose of our income tax laws generally is to provide revenue through a tax on income. This purpose is manifested in section 105(a)'s general rule that amounts received from employer funded health and accident plans are includable in gross income. Section 105(c) also serves this purpose. That section manifests an intent to exclude from gross income health and insurance payments that do not resemble income while including those that do. Section 105(c)(2) is the primary mechanism for accomplishing this purpose. It excludes from gross income accident and health insurance benefits that vary according to the nature of the taxpayer's injury. Such payments are compensation for "the permanent loss or loss of use of a member or function of the body, or permanent disfigurement." As such they do not resemble income. On the other hand, section 105(c)(2) includes in income amounts that vary according to the amount of time an employee is absent from work. Such amounts resemble income in that they compensate a person for lost wages.

■ In order to accomplish this congressional purpose, the nature-of-the-injury requirement must be read to require that benefits vary according to the type or severity of a person's injury. Only in that

situation do the benefits appear to be compensation for the injury. We therefore hold that amounts received as accident or health insurance benefits includable in gross income under section 105(a) may be excluded from gross income under section 105(c) only if the amount an employee receives from such a plan varies according to the type or severity of the injury suffered by the employee.

Our holding is not inconsistent with our decision in *Wood.* The taxpayer in *Wood* was found to be totally and permanently disabled. *Wood,* 509 F.2d at 322. An employee who is totally and permanently disabled will always be at the top end of the severity scale and will therefore always be entitled to the maximum benefit. Because *Wood* was totally and permanently disabled, he was entitled to the highest amount of disability payments. Having received that amount, his benefits were calculated with regard to the severity of his injury. *See* Rev.Rul. 63–181, 1963–2 C.B. 74 (amounts received by a totally and permanently disabled employee are excludable from income under section 105(c)); Rev. Rul. 74–603, 1974–2 C.B. 35 (the amount received by the taxpayer in Rev.Rul. 63–181 was calculated with reference to the nature of his injury).[1]

Our interpretation of section 105(c)(2) is also consistent with the few cases that have specifically considered the nature-of-the-injury requirement. The Tax Court has held that benefits qualify for excludability under section 105(c) only if they vary according to the type of injury a taxpayer receives. *See Hines v. Commissioner,* 72 T.C. 715, 720 (1979). In *Hines,* the taxpayer's benefits did not qualify under section 105(c)(2) because under the plan in that case employees who had a heart attack received the same benefits as those who suffered a mental breakdown or lost a limb. *Id.* The Second Circuit appears to have adopted the reasoning of the Tax

1. Although revenue rulings do not have the force of law, they "do constitute a body of experience and informed judgment to which courts may properly resort for guidance in the interpretation of relevant revenue statutes and regulations." *Watts v. United States,* 703 F.2d 346, 350 n. 19 (9th Cir.1983).

Court. In *Caplin v. United States*, 718 F.2d 544 (2d Cir.1983), the Second Circuit stated in dictum that "all of the evidence at trial demonstrated that [plaintiff's] benefits were computed solely on the basis of his length of service and not on the basis of his disability. Therefore, the district court's finding that the conditions of IRC § 105(c)(2) were not met is fully supported by the record. *See Hines v. Commissioner*, 72 T.C. 715, 720 (1979)...." *Caplin*, 718 F.2d at 549.

■ We turn now to a consideration of the specific facts of this case. As the Tax Court found, Randall's benefits from the NFL Plan were not computed with reference to the type or severity of his injury. Rather, they were computed with reference to the amount of time that he played in the NFL. Further, Randall was not found to be totally and permanently disabled. Although Randall has lost most of the use of his neck and is unable to play professional football, the physician's reports submitted to the NFL Plan indicate that he is able to pursue gainful occupations other than professional football. Therefore, Randall is not totally disabled.[2] Under these circumstances, the amounts Randall received from the NFL Plan do not satisfy the nature-of-the-injury requirement of section 105(c)(2).

2. *Computed without Regard to the Period the Taxpayer is Absent from Work*

The Tax Court held that the amount Randall received from the NFL Plan does not qualify for exclusion from income because it was calculated with regard to the period Randall was absent from work. The Tax Court reasoned that because Randall was required to retire from the NFL to obtain benefits, the benefits were based on the amount of time he was absent from work.

■ We do not accept the Tax Court's reading of this requirement. The language of the requirement clearly contemplates that benefits will be includable in income if the amounts employees receive vary according to the amount of time they are absent from work. A requirement that employees retire from work in order to receive payments does not result in employees' benefits differing based on the amount of time they are absent from work. This conclusion is supported by our decision in *Wood*. The taxpayer in *Wood* was required to retire from his job to receive benefits from the plan. *Wood*, 590 F.2d at 322. Notwithstanding this fact, we held that he was entitled to exclude the amount of his benefits from gross income under section 105(c). *Id*. at 323.

■ Rev.Rul. 74–603, 1974–2 C.B. 35, relied on by the Tax Court, is not contrary to our conclusion. In the revenue ruling, the taxpayer's benefits were computed based on the fifteen year period from the date of his disability until the date he would reach age 65. Such a computation is clearly based on the period the taxpayer will be absent from work. In the case before us, Randall was required to retire from professional football, but his benefits were not calculated with reference to the period of time he would have been able to play football had he not been injured. Randall's benefits therefore were not calculated with regard to the period he was absent from work.

IV. CONCLUSION

The line-of-duty benefit that Randall received through the NFL Plan does not satisfy the nature-of-the-injury requirement of section 105(c)(2). Therefore, because benefits received through an employer funded accident or health insurance plan are excludable from income only if all of the

---

**2.** We do not decide at this time the precise standard for determining total a permanent disability. A decision on that issue must await a case in which the issue is presented. For purposes of this appeal we need only decide that an inability to continue in one's chosen profession standing alone is not a total and permanent disability. *See Watts v. United States*, 703 F.2d 346, 351 n. 23 (9th Cir.1983) (distinguishing between "permanently disabled" and "totally and permanently disabled").

section 105(c) requirements are satisfied, the Beislers must include the entire amount of Randall's benefits in their gross income.

The Tax Court's decision upholding the Commissioner's determination of a deficiency in the Beislers' 1979 income tax is AFFIRMED.

TANG, Circuit Judge, dissenting:

I dissent. Despite the majority's attempt to distinguish *Wood v. United States*, 590 F.2d 321 (9th Cir.1979), I believe that *Wood* requires reversal of the tax court.

First, the majority casts the § 105(c)(2) computation "with reference to the nature of the injury" requirement in a form Congress could not have intended. The majority states that an employee qualifies for the 105(c) exclusion "only if the amount an employee receives ... varies according to the type *or severity* of the injury suffered...." (emphasis added). Section 105(c)(1), however, specifically addresses the severity issue. Section 105(c)(1) requires that the injury constitute "a permanent loss or loss of use of a member or function of [the] body." An injury is sufficiently severe, then, if it is permanent and results in the loss of use of a member or function of the body. The majority's belief that the § 105(c)(2) nature-of-the-injury requirement again addresses the severity issue is illogical.

Second, a close reading of *Wood* indicates that the court consciously endeavored to interpret the § 105(c)(2) "with reference to the nature of the injury" requirement. In *Wood*, the employer disability plan did not define its permanent disability requirement on the basis of specific physical injuries. According to *Wood*, then, the threshold finding of a localized or nonlocalized permanent physical injury is sufficient to satisfy the requirement if that is the reason for the payment. A qualifying disability plan need not necessarily vary award amounts according to distinctly different types of physical injuries.

As the majority notes, the taxpayer in *Wood* was totally and permanently disabled. The majority's conclusion that a totally and permanently disabled employee will always be entitled to the maximum possible benefit not only assumes that 105(c)(2) requires a severity index, which it does not, but also begs the question. The real question is whether the 105(c)(2) nature-of-the-injury computation requires that award amounts vary according to the type of injury. *Wood* clearly answers that question in the negative.

The disability payments awarded to Beisler under the NFL Plan do not differ from those awarded to the taxpayer in *Wood*. Under the NFL Plan, a player receives disability benefits if he incurred "a substantial disablement" from any regular NFL game. Once the threshold of "substantial disablement" for a given injury is reached (50% disablement in the case of a neck injury), disability benefits vest. As in *Wood*, the threshold finding of a localized or nonlocalized permanent physical injury is sufficient to satisfy the § 105(c)(2) requirement. The computation of entitlement itself satisfies the "computation with reference to the nature of the injury" requirement.

I do not disagree that a refinement of the disability award based upon the type and location of the injury falls within the contemplation of the 105(c)(2) language. *Wood* teaches, however, that such refinement, while acceptable, is simply not a necessary requirement.

*Watts* does not speak to the § 105(c)(2) "with reference to the nature of the injury" issue. As the majority must acknowledge, the only issue in *Watts* is the adequacy of the evidence of permanent disability under section 105(c)(1); compliance with 105(c)(2) was assumed. The *Watts* court held that high blood pressure was not in itself a disabling injury; rather, it was a medical condition.

Likewise, *Hines* involved the identical "condition" versus "injury" distinction. In *Hines*, an airline pilot suffered a heart attack but recovered fully. Nevertheless, the heart attack permanently disqualified the pilot from reobtaining his pilot's li-

cense. The tax court found that the § 105(c)(1) "permanent loss or loss of use of a member or function of the body" requirement was not met when the disability disqualified the taxpayer only from a specific kind of job or work. The claimant, the court held, must be physically and functionally disabled for all purposes.

*Hines* then addressed the § 105(c)(2) "with reference to the nature of the injury" requirement and concluded that to qualify a disability plan must base award amounts upon distinctly different types of physical injuries. This holding directly conflicts with the Ninth Circuit holding on this issue in *Wood.*

*Wood* is controlling authority in this matter and I am hard-pressed to see how one can distinguish it from the facts now before us. We are bound by our own circuit precedent. The court in *Wood* was confronted with the identical issue before us now and that court, our court, made a conscious interpretive choice. I feel obligated to follow that choice. Therefore, I would reverse the judgment of the tax court.