GEORGE H. GORDON AND SUZANNE GORDON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 20256-85. Filed March 17, 1987.

---

*Steven L. Sablowsky,* for the petitioners.
*Raymond N. McCabe,* for the respondent.

### OPINION

NIMS, *Judge*: Respondent determined a deficiency in petitioners' 1980 Federal income tax in the amount of $19,626. After a concession by petitioners the only issue remaining for decision is whether petitioners may exclude, under section 105(c),[1] a $102,098 lump-sum distribution to petitioner George H. Gordon (sometimes herein called petitioner or Gordon) from the United Baking Co. Profit-Sharing Plan and Trust.

All of the facts have been stipulated and are so found.

Petitioners resided in Pittsburgh, Pennsylvania, when their petition was filed.

Gordon was born on August 26, 1921. In 1956, he and Bernard J. Tepper formed United Baking Co., and at all relevant times owned the United Baking stock equally. Between 1969 and 1978 Gordon served as president.

In 1956, the company adopted the United Baking Company Profit-Sharing Plan and Trust which provided the participants with deferred compensation payable as follows:

4.1(d) *Time and Manner of Payment*

Unless the Participant elects to defer payment to a later date, the payment of benefits shall begin not later than sixty (60) days after the close of the Plan Year in which the latest of the following events occurs:

(1) The Participant's attainment of his Normal Retirement Date as defined in Article I, Section 1.3(c),

(2) The tenth (10th) anniversary of the date on which the Participant commenced participation in the Plan, or

(3) The close of the Plan Year in which the Participant's service terminated.

Upon the termination of employment for any reason other than retirement, death or disability, the payment of benefits may begin at such earlier time as the Trustees, in their absolute discretion, may determine.

---

[1]Except as otherwise noted, all section references are to sections of the Internal Revenue Code in effect for 1980. All Rule references are to the Tax Court Rules of Practice and Procedure.

The plan created a separate account for each participant, and provided for annual proportionate allocations and crediting of contributions, income, gains, and losses among all participants' accounts. When a participant's employment with United Baking was terminated by death, retirement, or disability, his account was to be valued as to the last valuation date proceeding termination.

The plan provided that each participant's interest would become fully vested upon completion of 15 years of service and plan participation, upon the participant's retirement at the normal retirement age of 65 or upon established disability or at death before retirement.

The plan contained the following provision regarding disability:

4.3 *Distribution in the Event of Disability*
(a) *Proof*
"Disability" shall be established:
1. Upon certification of a qualified physician, to the satisfaction of the Trustees, that the Participant is mentally or physically disabled from further performance of his duties and that such disability is likely to be permanent, or
2. By a similar determination which is the result of arbitration as provided in ARTICLE VIII hereinafter.
(b) *Benefits*
Upon proper determination of disability by the Trustees under Section 4.3(a) above, the accumulated amount credited to the Participant's account shall become 100% vested and shall be distributed to the Participant in accordance with the provisions of Section 4.1(d) [relating to "Distribution Upon Retirement"].

Beyond the foregoing, the plan contained no reference to accident or health benefits.

Gordon was first treated by a physician for arteriosclerotic heart disease, angina, and hypertension on April 4, 1975, and thereafter continued to be so treated about every 3 months.

In the latter part of 1978, United Baking experienced acute labor problems, including a strike, as a direct result of which the company permanently ceased operations on December 15, 1978. In March 1979, the operating assets of United Baking were sold to another bakery, and Gordon's resignation as president was entered in the minutes on March 13, 1979. In connection with the sale, Gordon

entered into a 5-year noncompetition agreement, for which he received $62,000.

On March 24, 1980, Gordon requested Tepper, as the plan trustee, to distribute the proceeds of his plan account, citing total disability as grounds for the distribution. As of that date, all participants of the plan except Gordon and Tepper had received distributions of their vested interests in the plan. As of the date Gordon resigned as president of United Baking, and irrespective of his physical condition at the time, his entire plan account was vested under the periodic vesting provision of the plan by virtue of the fact that he had been an active participant for 22 years.

On April 2, 1980, the plan trustee issued a check for $102,098 to Gordon, representing the total amount credited to his account.

After resigning as president of United Baking, Gordon filed disability insurance benefit claims·with the Veterans Administration, Metropolitan Life, John Hancock Life, Union Mutual Life, and New England Life, all of which claims were allowed. Gordon has neither sought nor obtained employment since resigning his position as president of United Baking.

Petitioners did not report any portion of the $102,098 distribution from the plan on their 1980 return.

The questions for decision are (1) whether the $102,098 lump-sum distributed to Gordon from his employer's profit-sharing plan can be deemed to have been received by Gordon under an accident or health plan within the contemplation of section 105,[2] and (2) if so, whether the

---

[2]Sec. 105, in relevant part, provides:

SEC. 105. AMOUNTS RECEIVED UNDER ACCIDENT AND HEALTH PLANS.

(a) AMOUNTS ATTRIBUTABLE TO EMPLOYER CONTRIBUTIONS.—Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer.

\* \* \* \* \* \* \*

(c) PAYMENTS UNRELATED TO ABSENCE FROM WORK.—GROSS INCOME DOES NOT INCLUDE AMOUNTS REFERRED TO IN SUBSECTION (A) TO THE EXTENT SUCH AMOUNTS—

(1) constitute payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement, of the taxpayer, his spouse, or a dependent (as defined in section 152), and

(2) are computed with reference to the nature of the injury without regard to the period the employee is absent from work.

\* \* \* \* \* \* \*

distribution satisfies the conditions for exclusion from income contained in section 105(c).

This Court has had prior occasion to consider whether certain accident or health-related distributions were paid pursuant to an accident or health "plan" as contemplated by section 105. See, e.g., *Laverty v. Commissioner*, 61 T.C. 160 (1973), affd. per curiam 523 F.2d 479 (9th Cir. 1975); *American Foundry v. Commissioner*, 59 T.C. 231 (1972), affd. on this issue 536 F.2d 289 (9th Cir. 1976); *Lang v. Commissioner*, 41 T.C. 352 (1963); *Estate of Kaufman v. Commissioner*, 35 T.C. 663 (1961), affd. per curiam 300 F.2d 128 (6th Cir. 1962). However, the question of whether a profit-sharing plan does in fact serve in the dual capacity of profit-sharing plan and accident or health plan appears to be one of first impression in this Court. And insofar as we have been able to ascertain, the question has similarly not been considered by the Third Circuit Court of Appeals, to which an appeal in this case would lie.

Section 105(a) permits exclusion from gross income of certain amounts received through accident or health insurance, and section 105(e) equates generally amounts received through an uninsured accident or health *plan* with amounts received through accident or health insurance. Sec. 1.105-5(a), Income Tax Regs. The regulation posits that "In general, an accident or health plan is an arrangement for the payment of amounts to employees in the event of personal injuries or sickness." Under the regulation, the plan may cover one or more employees, there may be different plans for different employees or classes of employees, the plan may be insured or noninsured, and need not be in writing nor need the benefits under the plan be enforceable, so long as the covered employee is aware of the existence of the plan. It is also immaterial who makes payment of the benefits under the plan. The regulation provides that "For example, payment may be made by the employer, a welfare fund, a State sickness or disability

---

(e) ACCIDENT AND HEALTH PLANS.—For purposes of this section and section 104—

(1) amounts received under an accident or health plan for employees, and

(2) amounts received from a sickness and disability fund for employees maintained under the law of a State, or the District of Columbia,

shall be treated as amounts received through accident or health insurance.

benefits fund, an association of employers or employees, or by an insurance company."

But there are limits. We have held that the legislative history of section 105 "indicates that the use of 'plan' signifies something more than merely one or more ad hoc benefit payments. Had Congress intended to exclude from gross income all ad hoc benefit payments arbitrarily made at the complete discretion of the employer in the absence of any sort of prior arrangement or practice, the use of the term 'plan' would scarcely have been necessary." *Estate of Kaufman v. Commissioner*, 35 T.C. at 666.

We seriously question whether the United Baking Co. Profit-Sharing Plan and Trust was the type of accident and health plan Congress had in mind when it enacted section 105. While the legislative history does not suggest the shape the plan must take, it does specify that "the exemption [under section 105(c)] is to be granted only to benefits paid out under an arrangement which constitutes a plan," and as noted above accords equal treatment to insured and noninsured sickness and accident benefits, i.e., "payments for the permanent loss (or loss of use) of a member, or function, of the body or for permanent disfigurement"—typically benefits payable under health and accident insurance. S. Rept. 1622, 83d Cong., 2d Sess. 185 (1954); 3 U.S. Code Cong. & Adm. News 4645, 4818 (1954).

The United Baking profit-sharing plan contains no hint that it was ever intended to be an accident or health plan. Section 4.3(b) of the plan merely provides for full vesting and distribution in the event of full and permanent disability under one of the alternative methods available under another section of the plan. In Rev. Rul. 69-141, 1969-1 C.B. 48, the Internal Revenue Service ruled that distributions made from a qualified profit-sharing trust to pay for medical care expenses of the employee-participant are not accident and health benefits excludable under section 105(b) but are taxable under section 402(a) as previously earned deferred compensation. A revenue ruling is of course not ordinarily precedential in this Court (*Estate of Lang v. Commissioner*, 64 T.C. 404, 407 (1975), affd. in part and revd. in part 613 F.2d 770 (9th Cir. 1980)), but in this case we are persuaded by the rationale of Rev. Rul. 69-141, and

believe it to be equally applicable here.[3] While the ruling deals with section 105(b) (relating to medical care benefits), sections 105(b) and 105(c) are analogous in the context of this case.

The ruling suggests the following points:

(1) Amounts contributed by an employer out of its profits represent deferred compensation for services rendered by the employee and are taxable to him as provided in section 402(a) when actually distributed or made available.

(2) The fact that a distribution may be made from a profit-sharing plan in the event of illness or physical loss does not change the character of the distribution from one of deferred compensation to one of accident or health benefits to which section 105(b) or (c) applies.

(3) Under a profit-sharing plan, unlike an accident or health plan, the participant becomes entitled to the amounts representing his vested interest thereunder regardless of whether he receives reimbursement for medical care expenses under section 105(b) or the kind of physical loss contemplated by section 105(c).

(4) The use of the money distributed for medical care under section 105(b) or for physical loss under section 105(c) is no different under the foregoing circumstances than the use thereof for other personal expenses.

Even if the distribution to Gordon could be said to be a payment for total and permanent disability as defined in the United Baking plan, which the facts lead us to seriously question, we think the character of the distribution to Gordon remains that of deferred compensation taxable when distributed, and not that of an excludable payment for the permanent loss or loss of use of a member or function of the body under section 105(c).

Petitioners place their primary reliance upon *Wood v. United States*, 590 F.2d 321 (9th Cir. 1979). In *Wood*, the Circuit Court affirmed the lower court's holding that a lump-sum profit-sharing distribution which the taxpayer received upon termination of his employment due to disabil-

---

[3]We note that the Ninth Circuit has stated that "A revenue ruling, as distinguished from a regulation or administrative decision does not have the force and effect of law. Nevertheless, the rulings do constitute a body of experience and informed judgment to which courts may properly resort for guidance in the interpretation of relevant revenue statutes and regulations. [*Watts v. United States*, 703 F.2d 346, 350 n. 19 (9th Cir. 1983). Citations omitted.]"

ity was excludable from income under section 105(c) and (e) since the plan under which the money was received served a dual purpose as a profit-sharing plan and as an accident and health plan and since the taxpayer's entitlement to payment came about as a result of disability, meaning that payment was under the accident or health plan. In its *Wood* opinion, the Ninth Circuit notes that:

> In the district court the government took the position that no part of the payment was excludable from income since the plan was a profit-sharing plan and did not qualify as an accident or health plan. The district court held that the plan did qualify as an accident or health plan under § 105. On appeal the government concedes that the nonvested 15 percent of the payment was excludable from income as an amount received through an accident or health plan. *Thus, the status of the plan as an accident or health plan under § 105 is not in dispute.* * * * [590 F.2d at 323. Emphasis added.]

The significance of the dual purpose holding in *Wood* would appear to be considerably lessened in light of the Government's partial concession and the court's rather conclusory holding referred to in the foregoing quotation.

Petitioners also rely on *Berner v. United States*, an unreported case (W.D. Pa. 1981, 81-2 USTC par. 9733), and *Masterson v. United States*, 478 F. Supp. 454 (N.D. Ill. 1979). In *Berner*, the District Court held that a lump-sum distribution to the taxpayer, who had lost substantially all respiratory capacity due to pulmonary emphysema, from his employer's profit-sharing trust constituted payment for the permanent loss of use of a function of his body, excludable under section 105(c).

The District Court in *Masterson*, applying *Wood*, held excludable under section 105(c) a distribution from a profit-sharing plan to an employee whose rights had vested but who was not eligible for retirement at the time he became disabled. The court stated that:

> Acknowledging that *Wood* supports plaintiff's position, the government urges that the *Wood* rationale be rejected. To do so would lead to inequitable results. Under the government's analysis an employee disabled after a short period of employment, before the right to the funds in the profit-sharing trust had vested, would not be required to pay taxes on the money received for his disability whereas an employee who became disabled after his right to the funds had become fully vested would be subjected to tax liability on these amounts. There is no reason why the

tax liability of a disabled employee should turn on when the disability occurs. The lump sum distribution made to Bernard Masterson is excludable from gross income because it represents compensation for disability. [478 F. Supp. at 455-456.]

The District Court does not consider whether the profit-sharing distribution might not constitute a taxable distribution of deferred compensation in either event and simply proceeds on the a priori assumption, relying on *Wood* without further analysis, that the distributing profit-sharing plan is a dual purpose plan.

On this issue, respondent relies primarily on *Caplin v. United States*, 718 F.2d 544 (2d Cir. 1983), and *Christensen v. United States*, an unreported case (D. Minn. 1986, 57 AFTR 2d 86-996, 86-1 USTC par. 9254).

The facts of the *Caplin* case are strikingly similar to those before us in that Caplin, the taxpayer, retired as president of his company after a number of years of service and received a lump-sum distribution from his company's profit-sharing plan based upon disability. The Second Circuit stated that "The question before us is whether [the lump-sum distribution] represented deferred compensation and was therefore taxable to him as income under section 402(a) * * * or whether the payment constituted a disability payment exempt from taxation under I.R.C. § 105(c)." 718 F.2d at 545; fn. ref. omitted. The Second Circuit, as do we, rejected the taxpayer's reliance upon *Wood v. United States*, 590 F.2d 321 (9th Cir. 1979), and *Masterson v. United States*, 478 F. Supp. 454 (N.D. Ill. 1979). In *Caplin*, the Second Circuit distinguished *Wood* by pointing out the Government concession discussed above. The court criticized the *Masterson* holding that the characterization of a payment focuses not on its source but on the circumstances under which it is made. The court observed that to decide the issue of excludability on an ad hoc or post facto basis depending on the circumstances under which a payment is made, not only puts the cart before the horse, but also ignores the legislative scheme. "In order to claim entitlement to income exclusion, Congress envisioned, first, that there be a plan, and, second, that the taxpayer prove he meets its conditions." *Caplin v. United States*, 718 F.2d at 547.

*Caplin*, in recognizing that a plan can serve in a dual capacity[4] and in analyzing whether the plan therein involved served in a dual capacity stated:

> Ordinarily, a definite program to provide accident or health coverage will be accompanied by certain indicia reflecting the plan's purpose. Thus, for example, such a plan, if written, could state that its purpose is to qualify as an accident or health plan within the meaning of the Internal Revenue Code of 1954, as amended, and that the benefits payable under it are eligible for income tax exclusion. Ordinarily, it is specified that the benefits payable under an accident or health plan are those amounts incurred for medical care in the event of personal injury or sickness. It could also specify that the benefits payable be limited to those amounts incurred for medical care in the event of personal injury or sickness, and provide for the specific reimbursement of such expenses. Further, a plan might allow an employee to be compensated for specific injuries or illnesses, such as the loss of use of an arm or leg. While these and other like provisions are not prerequisites to the existence of an accident or health plan, their absence plainly militates against a finding that a profit sharing plan serves a dual purpose. * * * [718 F.2d at 549.]

Here, as in *Caplin*, although the United Baking profit-sharing plan is quite detailed, none of those to-be-expected health or accident provisions are anywhere to be found.

*Christensen v. United States, supra,* also relied upon by respondent, follows *Caplin* and reaches a consistent result. The District Court held that the Northwest Airlines, Inc., Pilots' Pension Plan, from which the taxpayer, a diabetic, received disability retirement distributions, was not a dual purpose plan intended to provide section 105 benefits as well as retirement benefits.

We recognize that section 1.401-1(b)(1)(ii), Income Tax Regs., contains a sentence which provides that "A profit-sharing plan within the meaning of section 401 is primarily a plan of deferred compensation, but the amounts allocated to the account of a participant may be used to provide for him or his family incidental life or accident or health insurance." We reiterate, nevertheless, that there must be a definite program to provide such accident or health coverage accompanied by some indicia reflecting the plan's purpose. The United Baking plan contains no program nor any indicia that one was intended.

---

[4]See also *Watts v. United States*, 703 F.2d at 351 n. 23.

For the foregoing reasons, we hold (1) that without clear indicia to the contrary a deferred compensation profit-sharing plan is not ordinarily a dual purpose plan intended to provide both retirement and health or accident benefits, and (2) that benefits paid under a deferred compensation profit-sharing plan, including benefits paid where retirement is on account of disability, are taxable when distributed as deferred compensation and are not excludable from gross income as health or accident benefits under section 105. For these reasons, the $102,098 lump-sum distribution which Gordon received from the United Baking Co. Profit-Sharing Plan and Trust is not excludable from petitioners' 1980 gross income, but is taxable as deferred compensation.

While the foregoing holdings are dispositive of this case, for completeness we would further add that the distribution in question also fails to meet the requirement of section 105(c)(2) that the amount of any payment must be computed with reference to the nature of the injury. The nature of petitioner's illness was arteriosclerotic heart disease, angina, and hypertension. In *Hines v. Commissioner*, 72 T.C. 715 (1979), we held that a commercial airline pilot who was required to retire after suffering a heart attack was not entitled under section 105(c) to exclude benefits under the airline's loss of license plan because, among other things, the payments were not computed with reference to the nature of the injury. In *Hines*, we held that benefits qualify for excludability under section 105(c) only if they vary according to the type of injury a taxpayer receives. 72 T.C. at 720.[5]

In the case before us, Gordon received the entire amount credited to his account under the United Baking profit-sharing plan. The amount of the payment was in no way geared to his arteriosclerotic heart condition but was distributed to him either because he was totally and permanently disabled or because his interest was fully

---

[5]In *Beisler v. Commissioner*, T.C. Memo. 1985-25, the taxpayer, a professional football player, received 100 percent of his total "benefit credits" under the National Football League retirement plan because he was forced to retire from professional football as a result of "substantial disablement." One of the grounds upon which we held for the Commissioner was that the amount of the benefit was not based upon the nature of the injury sustained (60 to 79 percent loss of use of the neck). We note that by order entered July 30, 1986, in *Beisler v. Commissioner*, 795 F.2d 887 (9th Cir. 1986), the Circuit Court of Appeals for the Ninth Circuit withdrew its previous opinion reported at 787 F.2d 1325 (9th Cir. 1986).

vested and both the company and the plan had ceased operations. Such payment, not having been calculated with regard to the severity or nature of the injury, may not be excluded from gross income under section 105(c).

Petitioners have conceded an unrelated issue raised in their petition. Since we hold for respondent on the section 105 issue (the only remaining issue),

*Decision will be entered for the respondent.*