MICHAEL J. BERMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Berman v. Commissioner
Docket No. 13592-88
United States Tax Court
T.C. Memo 1989-654; 1989 Tax Ct. Memo LEXIS 656; 58 T.C.M. (CCH) 916; T.C.M. (RIA) 89654; 11 Employee Benefits Cas. (BNA) 2406; December 12, 1989
Stephen M. Feldman and Phillip L. Sternberg, for the petitioner. Mark I. Siegel, for the respondent. COHEN
MEMORANDUM OPINION COHEN, Judge: Respondent determined a deficiency of $ 224,645.43 in petitioner's Federal income tax for 1983. The sole issue for decision is whether all, or any part, of distributions by a pension plan and a defined benefit plan represent deferred compensation taxable under section 402(a), or whether the payments constitute distributions from an employer accident and health plan excludable under section 105(c). Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the year in issue. *658 This case was submitted fully stipulated. The facts set forth in the stipulation are incorporated as our findings by this reference. Petitioner resided in Bloomfield Hills, Michigan, when he filed the petition in this case. Petitioner received his degree as a Doctor of Osteopathic Medicine from the Kansas City College of Osteopathic Medicine in 1972. From 1972 until August 1979, petitioner was employed by Grand Medical Clinic, P.C. (Grand), and Glendale Medical Laboratories, Inc. (Glendale), his wholly owned personal service corporations. Effective February 1, 1978, Glendale established a Defined Benefit Plan and Trust Agreement (the defined benefit plan) that provided the participants with deferred compensation payable on retirement, disability retirement, death, or termination of employment. According to the "Summary Plan Description," the purpose of the defined benefit plan was "to reward eligible employees for long and loyal service to the Company by providing for their financial security at retirement. It may also provide some additional protection in the event of death, disability, or other termination of employment." Employer contributions to the defined benefit plan *659 were actuarially determined based on the benefits that the participant would receive at retirement. The defined benefit plan provided that each participant's interest became fully vested on completion of 11 years of service. The defined benefit plan also provided for benefits in the event of a disability as follows: 5.3 DISABILITY RETIREMENT BENEFITS. (a) If a Participant becomes Totally and Permanently Disabled (see Section 1.26) prior to retirement or separation from service, and such condition continues for a period of six (6) consecutive months and by reason thereof such Participant's status of an Employee ceases, then said disabled Participant shall be entitled to receive his Present Value of Accrued Benefit. The benefits payable hereunder shall be paid pursuant to the provisions of Section 5.6. The defined benefit plan defined "Total and Permanent Disability" as: a physical or mental condition of a Participant resulting from bodily injury, disease, or mental disorder which renders him incapable of continuing any gainful operation and which condition constitutes a total disability under the Federal Social Security Act. Effective February 1, 1978, Glendale and Grand *660 established an Employees' Pension Plan and Trust (the pension plan) that provided the participants with deferred compensation payable on retirement, disability retirement, death, or termination of employment. According to the "Summary Plan Description," the purpose of the pension plan was to "reward Eligible Employees for long and loyal service. It may also provide certain benefits in the event of death, disability, or other termination of employment." Required employer contributions to the pension plan were based on a percentage of the participant's annual compensation. The pension plan provided that each participant's interest became fully vested on completion of 11 years of service, at age 65, upon disability, or at death. The pension plan also provided for benefits in the event of a disability as follows: 6.3 DETERMINATION OF BENEFITS IN EVENT OF DISABILITY In the event of a Participant's Total and Permanent Disability prior to retirement or separation from service, all amounts credited to such Participant's Account as of the subsequent Anniversary Date shall become vested. As of the Anniversary Date coinciding with or next following the event of Total and Permanent Disability, *661 the Trustee in accordance with the provisions of Sections 6.5 and 6.6, shall distribute to such Participant all amounts credited to the account of such Participant's Account. The pension plan defined "Total and Permanent Disability" as: a physical or mental condition of a Participant resulting from bodily injury, disease, or mental disorder which renders him incapable of continuing his usual and customary employment with the Employer. The disability of a Participant shall be determined by a licensed physician chosen by the Administrator. The determination shall be applied uniformly to all Participants. At all times, the administrator and trustee of both plans were either petitioner or petitioner's father, Louis Berman. Petitioner was the only participant entitled to receive benefits under the plans. On August 23, 1979, petitioner entered into a consent agreement with the Board of Osteopathic Medicine and Surgery, Department of Licensing and Regulation of the State of Michigan. The agreement provided that petitioner's license to practice medicine was suspended for 1 year. Petitioner was on probation for 5 years following the suspension. During September or October *662 1979, petitioner pleaded guilty to two counts of submitting false Medicaid claims to the State of Michigan. On October 3, 1979, petitioner was sentenced to serve from 1 to 10 years in prison on each count of submitting false Medicaid claims. Petitioner was incarcerated from October 1979 to February 1980. From the time of his release from prison in February 1980 through December 1982, petitioner received a series of loans from the pension plan and defined benefit plan. The loans from the pension plan totaled $ 545,000, and the loans from the defined benefit plan totaled $ 45,000. On April 22, 1980, approximately 2 months after his release from prison, petitioner began psychiatric treatment with Robert D. Woodward, M.D. Dr. Woodward diagnosed petitioner as suffering from chronic and severe post-traumatic stress disorder. Dr. Woodward concluded that petitioner, as a result of his mental impairment, was unable to engage in any substantially gainful activity. On April 19, 1983, the administrator and the trustee under the plans determined that petitioner was permanently disabled and distributed $ 793,055 to petitioner under the "Determination of Benefits in Event of Disability" *663 provision in the plans. The $ 793,055 distribution included $ 568,398.94 from the pension plan and $ 224,656.18 from the defined benefit plan. At the time of the distributions, petitioner's inability to engage in substantially gainful activity had lasted for a continuous period greater than 12 months. At the time of the distribution, petitioner paid the $ 545,000 loan from the pension plan, and paid interest of $ 92,560.41 on that loan. At the time of the distribution, petitioner also paid the $ 45,000 loan from the defined benefit plan and paid interest of $ 14,906.25 on that loan. Louis Berman, petitioner's father and administrator or trustee of the plans, died sometime after the distributions were made to petitioner in 1983. On his 1983 Federal income tax return, petitioner reported the distributions as tax-free pension and annuity income. In a statement attached to his return, petitioner stated: These funds were distributed to the taxpayer pursuant to the Determination of Benefits in Event of Disability provision in the corporate plan trust agreements. The taxpayer, who is permanently disabled, has excluded such amounts from gross income based on Code Section 105(c), *664 Accident and Health Payments Unrelated to Absence from Work. Respondent determined that the distributions from the plans are includable in petitioner's taxable income for 1983. Respondent contends that both the defined benefit plan and the pension plan distributions are includable in gross income because (1) the defined benefit plan and the pension plan are not dual-purpose plans providing both retirement benefits and health or accident benefits; (2) the distributions were not for the loss or loss of use of a member or function of the body; (3) the distributions were not computed by referring to the nature of the injury; and (4) the distributions were conditioned on petitioner's absence from work. Petitioner maintains that both distributions were made because of his disability and consequently are excludable from his gross income. Section 105(a) provides generally that accident or health insurance amounts received by an employee for personal injuries and sickness are includable in income. Section 105(c), however, provides an exception to the general rule of includability: (c) Payments *665 Unrelated to Absence From Work. -- Gross income does not include amounts referred to in subsection (a) to the extent such amounts -- (1) constitute payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement, of the taxpayer, his spouse, or a dependent (as defined in section 152), and (2) are computed with reference to the nature of the injury without regard to the period the employee is absent from work. Petitioner, relying principally on Wood v. United States, 590 F.2d 321 (9th Cir. 1979), and Masterson v. United States, 478 F. Supp. 454 (N.D. Ill. 1979), contends that the defined benefit plan and the pension plan are dual-purpose plans intended to provide disability benefits. Neither of these cases, however, supports petitioner's position. In Wood v. United States, supra, the district court held that a profit-sharing plan qualified as an accident or health plan under section 105. Because the plan served a dual purpose as a profit-sharing plan and as an accident and health plan, a lump-sum profit-sharing distribution that the taxpayer received upon termination *666 of his employment due to disability was excludable from income under section 105. On appeal, the Government conceded the status of the profit-sharing plan as an accident or health plan. Wood v. United States, 590 F.2d at 323. As a result of the Government's concession, the Court of Appeals for the Ninth Circuit, in considering the characterization of the payments made pursuant to the profit-sharing plan, focused on the circumstances in which the payments were made rather than the source of the funds. Because the profit-sharing plan served dual purposes, the court held that the precise nature and taxable status of payments from the plan were uncertain until the funds were actually disbursed. Wood v. United States, 590 F.2d at 323. As we noted in Gordon v. Commissioner, 88 T.C. 630, 637 (1987), however, "The significance of the dual purpose holding in Wood would appear to be considerably lessened in light of the Government's partial concession." In Masterson v. United States, supra, the district court, applying *667 Wood, held excludable under section 105(c) a distribution from a profit-sharing plan to an employee whose rights had vested but who was not eligible for retirement at the time he became disabled. The district court cited Wood for the proposition that the characterization of a payment depended on the circumstances under which it was made rather than the source of the payment. The court held that the tax liability of a disabled employee should not turn on whether the disability occurred before or after the employee's right to funds in the profit-sharing trust had vested. The district court, however, did not consider whether the profit-sharing distribution might not constitute a taxable distribution of deferred compensation in either event, and simply proceeded on the assumption that the profit-sharing plan was a dual-purpose plan. Masterson v. United States, 478 F. Supp. at 455-456. Accordingly, this case does not support petitioner's position that the deferred compensation plans in issue are dual-purpose pension/disability plans. Respondent contends that the defined *668 benefit plan and the pension plan at issue herein do not qualify as accident or health plans. Respondent recognizes that, under some circumstances, a defined benefit plan or a pension plan may serve a dual purpose and also be an accident and health plan. Respondent, relying primarily on Gordon v. Commissioner, supra, and Caplin v. United States, 718 F.2d 544 (2d Cir. 1983), argues that under the circumstances presented herein the defined benefit plan and the pension plan do not serve a dual purpose. Petitioner states that he: realizes that this Court in Gordon vs. Commissioner, * * * has held that a retirement plan, in order to qualify as a dual purpose plan, should contain certain indicia such as (i) stating the purpose to qualify as an accident or health plan; (ii) stating that benefits payable are eligible for income tax exclusion; and (iii) providing for medical care in the event of personal injury. Petitioner asserts that these indicia alone are not sufficient grounds to hold that the Plans presently before the Court do not qualify as dual purpose Plans, based upon the disability benefit provisions discussed above. * * * In *669 Gordon, this Court held "that without clear indicia to the contrary a deferred compensation profit-sharing plan is not ordinarily a dual purpose plan intended to provide both retirement and health or accident benefits." Gordon v. Commissioner, 88 T.C. at 640. In reaching this conclusion, we considered both the legislative history of section 105(c) and the specific provisions of the deferred compensation plan in dispute. We concluded that the plan contained "no hint that it was ever intended to be an accident or health plan." Instead, the plan merely provided "for full vesting and distribution in the event of full and permanent disability." Gordon v. Commissioner, 88 T.C. at 635. Similarly in Caplin, the Court of Appeals for the Second Circuit held that "In order to claim entitlement to income exclusion, Congress envisioned, first, that there be a plan, and, second, that the taxpayer prove he meets its conditions." Caplin v. United States, 718 F.2d at 547. *670 The Court of Appeals in Caplin, as did this Court in Gordon, rejected the taxpayer's reliance upon Wood v. United States, supra, and Masterson v. United States, supra. In Caplin, the Court of Appeals distinguished Wood by pointing out the Government's concession that the plan was a dual-purpose plan. That court also criticized the Masterson holding that would decide the issue of excludability "on an ad hoc or post facto basis depending on the circumstances under which a payment is made" because it "not only puts the cart before the horse, but also ignores the legislative scheme." Caplin v. United States, 718 F.2d at 547. In recognizing that a plan can serve in a dual capacity, the Court of Appeals stated: Ordinarily, a definite program to provide accident or health coverage will be accompanied by certain indicia reflecting the plan's purpose. Thus, for example, such a plan, if written, could state that its purpose is to qualify as an accident or health plan within the meaning of the Internal Revenue Code of 1954, as amended, and that the benefits payable under it are eligible for income tax exclusion. *671 Ordinarily, it is specified that the benefits payable under an accident or health plan are those amounts incurred for medical care in the event of personal injury or sickness. It could also specify that the benefits payable be limited to those amounts incurred for medical care in the event of personal injury or sickness, and provide for the specific reimbursement of such expenses. Further, a plan might allow an employee to be compensated for specific injuries or illnesses, such as the loss of use of an arm or leg. While these and other like provisions are not prerequisites to the existence of an accident or health plan, their absence plainly militates against a finding that a profit sharing plan serves a dual purpose. * * * [Caplin v. United States, 718 F.2d at 549.] The intent of section 105(c) is to offer relief in the form of "a tax benefit to one who receives a severe physical injury which permanently and significantly lessens the quality of life which he had enjoyed prior to the injury" and who receives compensation because of it. Hines v. Commissioner, 72 T.C. 715, 718-719 (1979). Neither of the deferred compensation plans in the *672 instant case, like the plans at issue in Gordon and Caplin, have any of the aforementioned indicia reflecting that either plan was intended to serve a dual purpose as an accident or health plan. Particularly, the plans do not vary the amount of benefits payable according to the nature or extent of specific illnesses or injuries suffered. The failure to vary the benefits depending on the severity or nature of the illness, as well as the failure to provide any benefits for short-term accidents or illnesses, is further evidence that the deferred compensation plans were not intended to be dual-purpose pension/disability plans. Petitioner concedes that the plans at issue do not contain specific reference to a dual purpose as suggested in Gordon and Caplin. Petitioner argues, however, that both plans treat the timing and size of the disability benefits differently from retirement or other benefits, thus indicating the employer's intent that each plan serve a dual purpose. Specifically, petitioner points out that a disabled employee who was not fully vested in either deferred compensation plan would be entitled to receive a larger benefit than that which he would have *673 been entitled to receive had he simply terminated his employment. The plans at issue herein equate total and permanent disability with retirement at the normal retirement age; the plans do not provide benefits for other illnesses or injuries that are only partial or temporary. This permanent disability provision is merely one of several provisions that can trigger a participant's claim to his accrued benefits. As we held in Gordon, the requirements for excluding income under section 105(c), which would otherwise be taxable under section 402(a), are not met by providing for the immediate and full vesting of accrued benefits in the event of a total and permanent disability. Petitioner points out that the deferred compensation plans at issue in Caplin and Gordon were profit-sharing plans while the plans at issue in the instant case are defined benefit and defined contribution pension plans. In Caplin, the Court of Appeals noted that: Generally, profit sharing plans and accident or health plans serve different purposes. Profit sharing plans are designed to provide an employee *674 with deferred compensation, the amount of which depends upon the success of the business and the employee's position in that business. On the other hand, accident or health plans are designed to provide payments to employees in the event of illness or injury, without regard to the profitability of the business. * * * [Caplin v. United States, 718 F.2d at 548.] In the instant case, the employer's profitability would not have affected the contributions required to be made by the employer to either the defined benefit plan or the pension plan. Unlike the profit-sharing plans at issue in Caplin, Gordon, and Paul v. United States, 682 F. Supp. 329 (E.D. Mich. 1988), affd. without published opinion 872 F.2d 1027 (6th Cir. 1989), the deferred compensation plans at issue herein required annual contributions regardless of the profitability of the employer. In reaching our decision in Gordon, however, we did not consider the profit-sharing form of employer contributions to be a significant factor in determining whether the deferred compensation plan was a dual purpose pension/disability plan. The distinction between employer *675 contributions to a defined benefit or defined contribution plan, as in the instant case, and employer contributions to a profit-sharing plan, as in Caplin and Gordon, is not a clear indication that the plans at issue were intended to serve dual purposes as both pension and disability plans. In Paul v. United States, supra, the district court held that the purpose of a profit-sharing plan was strictly financial rather than to provide for the health and welfare of the employees. Although the preamble of the profit-sharing plan stated that its purpose was to assure employees that "they will share in the prosperity of the business, and to provide for accumulation of funds for their retirement and financial emergencies," the district court held that the language relating to "financial emergencies" did not provide clear indicia of a dual-purpose accident and health plan. Paul v. United States, 682 F. Supp. at 331-332. Petitioner contends that the facts of the instant case are distinguishable from Paul. Unlike the preamble of the profit-sharing plan in Paul, the "Summary Plan Descriptions" of both the defined benefit plan and the pension *676 plan note that the deferred compensation plans "may also provide" additional benefits "in the event of death, disability, or other termination of employment." The "Summary Plan Descriptions" are merely brief descriptions of the "Plan and Trust Agreements." Significantly, neither deferred compensation plan contains any other clear indicia reflecting a dual purpose as set forth in Caplin v. United States, supra.
To be excludable from gross income under section 105(c), benefit payments must be made by a plan that qualifies as an accident or health insurance plan under section 105(e). Because the defined benefit plan and the pension plan do not so qualify, petitioner's benefit payments are not excludable. Decision will be entered for the respondent.